## Case No. 3,752.

### DELANO v. The J. WALLS, JR.

#### [N. Y. Times, May 4, 1862.]

MARITIME LIENS—SUPPLIES—EQUITABLE CONSIGNMENT OF SHIP.

[1. A vessel was allowed to leave New York on the promise of a part owner to pay petitioner for supplies. Thereafter, to prevent an attachment in Baltimore, the part owner agreed to consign the vessel to petitioner, at New York; but, though brought to that port, the agreed consignment of the vessel was not made, but she was libeled and sold under proceedings by other parties. *Held* that, though the vessel itself could not have been libeled for the debt, the court, under the circumstances, would decree the payment of petitioner's debt out of the surplus of the proceeds of the sale. The Santa Anna, Case No. 12.325: The Stephen Allen, Id. 13,361; Zane v. The President, Id. 18,201,—followed:]

[2. In view of the circumstances under which the vessel left New York, and the fact that she was not attached at Baltimore, by reason of the promise of consignment, the court, for the purpose of giving petitioner a lien on the proceeds, will consider that in equity the vessel was consigned.]

This case came up on a petition of [Joseph W.] Delano to be paid out of the proceeds of the vessel [the bark J. Walls, Jr.] the amount of a bill of supplies furnished her by him. The supplies were furnished her in this port on the application of her master. About the time the delivery of them was to be completed, Johnson, the present claimant, purchased a third of the vessel. On such purchase the vendor and Johnson expressly agreed with Delano that, as part of the consideration of that purchase, Johnson should pay Delano's bill, amounting to over $1,000; and thereupon, Delano furnished the supplies, and allowed the vessel to depart from the state without filing any lien. Johnson did not pay the bill, and the bark afterward being in Baltimore, Delano took measures to have her attached there, to collect his debt. Johnson, learning this, wrote to him, telling him that he had bought another third of the vessel, and would be responsible for the debt; that he had gone to Baltimore to take the vessel and bring her to New York, and as soon as he could get her he would consign her to him (Delano) in New York, and requesting him not to attach the vessel. Delano, accordingly, did not have her attached, and she was brought to New York by Johnson, but he did not consign her to Delano, and on her arrival here, she was immediately libeled by Peter Rice, et al., and

was thereafter sold under the process issued in that suit for $4,400. A decree was made in favor of the libelants in that suit for $1,700 and costs, which was paid out of the proceeds. The balance remaining was, on a consent signed by the proctor for one claimant, Douglass, by some means not sufficiently explained, immediately obtained by the present claimant, Johnson, and his proctor. Delano's petition was filed on the same day, and a stipulation was afterwards given to secure to him whatever sum the court should award him.

Benedict, Burr & Benedict, for petitioner.
Beebe, Dean & Donohue, for claimants.

HELD BY THE COURT: It is conceded that the petitioner could not have maintained his libel directly against the vessel for the recovery of his debt, but it is insisted, upon the authority of the case of The Santa Anna [Case No. 12,325], decided in this district in 1829, and the case of The Stephen Allen [Id. 13,361], decided here in 1830, as well as of the case of Zane v. The President [Id. 18,201], decided by Judge Washington in 1824, that this court should direct the payment of the petitioner's debt out of the surplus in court. If these cases are to be followed, the petitioner must have a decree. I am aware that the tendency of the later decisions is to restrict the remedy of petitioners against the surplus to cases in which they had a maritime lien or privilege upon the vessel, or else a lien thereon which could have been enforced in a court of common law or equity. And yet I am not prepared, while sitting temporarily in this district, to disregard the cases arising here, which, though decided in 1829 and 1830, were published with the sanction of the learned judge of this district in 1855, and may be considered as authoritative expositions of the rule then acted upon in this district. This case is, I think, a stronger case than that of The Santa Anna [supra], and a decree for the petitioner will be fully sustained by the case of The Stephen Allen [supra].

There is also another ground upon which a decree for the petitioner may be based. The letter of Johnson from Baltimore may be properly regarded as a promise to consign the vessel to the petitioner; in other words, to put her in his possession or under his control for the security of his debt. Such is the fair construction of the promise, for so Johnson evidently intended it should be understood. Considering the circumstances under which she was permitted to leave the state, upon the faith of Johnson's agreement to pay, and the fact that she might have been attached for the debt in Baltimore, and was not, in consequence of this letter, I shall hold that this agreement was founded upon sufficient consideration, and was in equity an appropriation of the specific property to the payment or security

of the petitioner's debt. The bark, on her arrival in New York, should have been placed in his possession under the agreement; and, as between the parties to the agreement, the court is authorized to consider what, under the contract and in equity, should have been done, as having been actually done, for the purpose of giving the petitioner a lien on the surplus funds in court. If Johnson had carried out his contract, instead of fraudulently violating it, the petitioner could have held the vessel in his possession as a security for his debt, and, in a court of equity, he is not to be permitted to take advantage of his own misconduct. The petitioner must have a decree for his debt and interest, with costs.